## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN T. MCPHERSON | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| RICHARD V. SPENCER, in his official | ) | |
| capacity as the Secretary of the Navy, | ) | |
| 1200 Navy Pentagon | ) | |
| Washington, DC  20350-1200, | ) | |
| | ) | |
| UNITED STATES NAVY | ) | |
| 2000 Navy Pentagon | ) | |
| Washington, DC 20350-2000, | ) | |
| | ) | |
| BOARD FOR CORRECTION OF | ) | |
| NAVAL RECORDS (BCNR) | ) | |
| 701 S. Courthouse Road | ) | |
| Building 12, Suite 1001 | ) | |
| Arlington, VA  22204-2490 | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Stephen T. McPherson ("Plaintiff"), brings forth this action under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, for judicial review of a final agency decision denying his request to remove adverse information from his Official Military Personnel File ("OMPF"), reinstatement of his promotion to O-4, and screening by a Special Selection Board ("SSB").  As grounds therefor, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2.      Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e)(1)(A)

because at least one defendant resides in this district.

## PARTIES

3.      Plaintiff is a Navy veteran.  He is a citizen of the United States and currently resides in the city of Naples, Campania Province, in the nation of Italy.  He was honorably discharged from the United States Navy on March 31, 2016.

4.      Defendant, Richard V. Spencer, is the SECRETARY OF THE NAVY ("the Secretary") and is named solely in his official capacity.  Mr. Spencer is authorized by statute (10 U.S.C. § 1552) to act through a board of civilians under the procedures established by him, to correct any military record of a former member of the Navy when he considers it necessary to correct an error or remove an injustice.

5.      Defendant UNITED STATES NAVY has responsibility for the administration, control, and operation of the United States Navy (the "Navy"), a military organization whose primary responsibility is for naval-based military operations.

6.      Defendant BOARD FOR CORRECTION OF NAVAL RECORDS ("BCNR") is the highest administrative level of review of personnel actions taken by lower levels of the Navy. The BCNR is the board of civilians established by the Secretary of the Navy, which, pursuant to 10 U.S.C. § 1552, considers applications filed before it for the purpose of determining whether an applicant's Navy military record should be changed to correct an error or injustice.

## FACTUAL ALLEGATIONS

7.      Following the terrorist attacks on September 11, 2001, Plaintiff chose to leave a promising career as an attorney to serve and protect his country as a Naval Aviator in the United States Navy on December 7, 2003.

8.      Plaintiff's career in the Navy included multiple deployments to the Persian Gulf, the Horn of Africa, and South America.

9.      Plaintiff had a son born with alobar holoprosencephaly, a severe brain defect. Plaintiff's son died shortly after birth in Plaintiff's arms.  Despite having to cope with the loss of his son, Plaintiff received little support from the Navy, and was required to complete long absences from home.

10.     Plaintiff continued to receive high performance evaluations, several times being ranked as the highest performing and "number one" officer amongst his peers.

11.     In August of 2011, Plaintiff was assigned to work as a Staff Action Protocol Officer for the Chief of Naval Forces Europe, Chief of Naval Forces Africa, Commander SIXTH FLEET (CNE-CNA-C6F).

12.     Plaintiff worked in an office adjacent to a Navy civilian employee, Ms. Nicole Thomas, at CNE-CNA-C6F.  Though the feelings were not reciprocated, Ms. Thomas, pursued Plaintiff romantically.  On two occasions, Ms. Thomas forced unwanted kisses on the Plaintiff. Plaintiff stopped Ms. Thomas from any further physical contact. It was later revealed that Ms. Thomas and her husband were swingers interested in romantically pursuing both Plaintiff and his wife.

13.     Subsequently, on January 20, 2012, Plaintiff was notified by the CNE-CNA-C6F Staff Judge Advocate the he was being investigated for violating Article 133, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 933, conduct unbecoming an officer and gentleman, and Article 134, UCMJ, 10 U.S.C. § 934, general article.  The investigation was initiated based on Facebook communications provided to Plaintiff's command leadership by Ms. Thomas's

3

husband.  Specifically, Plaintiff, a married man, was being investigated to determine whether he engaged in an unduly familiar relationship with the wife (Ms. Thomas) of a chief petty officer.

14.     The investigation revealed that Ms. Thomas's husband accessed her Facebook account without authorization, in violation of 18 U.S.C. §2510 *et seq.*, and created, edited, and/or altered communications to give the appearance of an inappropriate relationship between the Plaintiff and Ms. Thomas.

15.     Ms. Thomas's husband signed a statement requesting retraction of his actions and the fabricated or altered materials he had submitted to Plaintiff's command.

16.     Under 18 U.S.C. §2511(1)(c)(d), no one may use or disclose the contents of an electronic communication, knowing or having reason to know that the information was obtained by a violative interception, regardless of whether the user procured the interception.  Despite the lack of evidence to support the charge that Plaintiff engaged in an unduly familiar relationship with Ms. Thomas, Plaintiff felt coerced by leadership to accept Nonjudicial Punishment ("NJP") under Article 15, UCMJ, 10 U.S.C. § 815, in order to avoid potential disbarment if found guilty of violating the UCMJ at court martial.

17.     On February 16, 2012, Plaintiff was disciplined at NJP for violating Articles 133 and 134. The Chief of Staff, U.S. Naval Forces Europe Africa determined Plaintiff engaged in an unduly familiar relationship with the wife of a chief petty officer.  Plaintiff received a letter of reprimand, placed in his OMPF, and forfeiture of pay ($1,000.00) per month for two months.

18.     Plaintiff was never asked, nor did he enter a plea in the charges against him at NJP.  Additionally, Plaintiff did not receive the Report and Disposition of Offense(s) (NAVPERS 1626/7), which notifies service members of the nature of the accusations and of his

or her rights, until twenty (20) days after the NJP, on March 8, 2012. Plaintiff's appeal of the NJP to the Vice Chief of Naval Operations was returned without comment after over one year, and the subsequent request to the Commander SIXTH FLEET was handled by the original NJP Chief of Staff who denied the request for set aside. This officer was at the time under investigation for accepting bribes as well as conduct unbecoming of an officer in the Navy's Fat Leonard bribery scandal. Forced to retire, he has been censured by the Secretary of the Navy for conduct unbecoming, personal misconduct, poor judgment and poor leadership.

19.     Plaintiff discovered through the Privacy Act that the fraudulent and unlawful communications obtained in violation of 18 U.S.C. §2510 *et seq.* had been submitted by his command and added to his personnel records maintained by the Bureau of Naval Personnel. Plaintiff further discovered that Ms. Thomas subsequent contacts via email and handwritten notes submitted as exculpatory evidence in his multiple appeals had been removed prior to submission.

20.     Plaintiff and his assigned defense counsel's requests to expunge the fraudulent and unlawfully obtained communications were denied.

21.     On July 17, 2012, Plaintiff was notified his name was being withheld from the FY-13 Active Duty Lieutenant Commander URL Promotion List.

22.     Plaintiff was issued an adverse performance evaluation for the period of February 1, 2011 to March 23, 2012.

23.     On or about March 24, 2012, Plaintiff was reassigned to Naval Support Activity Naples, where he once again received superior performance evaluations, twice ranked as the number one officer in his grade, and awarded a Navy Commendation Medal.

24.     On February 14, 2013, Plaintiff was ordered to show cause for retention, and a Board of Inquiry elected to retain Plaintiff in the United States Naval service.

25.     On December 16, 2013, Plaintiff was reassigned and reported to Littoral Combat Ship Squadron One (LCSRON ONE) in San Diego, California.

26.     In April 2014, Plaintiff's supervisor authorized him to take his wife to the hospital as she was going into labor with their baby.  While en route to the hospital with his wife, the LCSRON ONE Chief of Staff, Commander Jennifer Ellinger left a voicemail for Plaintiff's supervisor stating she is "about to rip [Plaintiff] a new asshole" due to Plaintiff not responding to Commander Ellinger's email to "COME SEE ME NOW!"

27.     Immediately following the birth of his son, Plaintiff was ordered to report to Commander Ellinger, at which point Commander Ellinger berated and cursed at Plaintiff, making statements to the effect that Plaintiff was "an embarrassment to this command," and she was "looking for a fucking bottom-feeder lieutenant to fuck."

28.     Later in 2013, the Secretary of the Navy removed Plaintiff from the FY-13 Active Duty Lieutenant Commander URL Promotion List, which constituted his first failure of selection for promotion.  The Secretary of the Navy memorandum removing Plaintiff's selection for promotion incorrectly indicated Plaintiff committed "fraternization" under Article 134 of the UCMJ.

29.     Subsequently, Plaintiff received his second failure of selection for promotion, and was involuntarily discharged pursuant to 10 U.S.C. § 632 on March 31, 2016.

## STATUTORY AND REGULATORY BACKGROUND

30.     10 U.S.C. § 1552 mandates that the Secretary of each military department act

"through boards of civilians," under procedures established by the Secretary, to correct any

military record of any current or former member of that department when he or she considers it

necessary to correct an error or remove an injustice.  Pursuant to this mandate, Defendant

Secretary of the Navy has established Defendant BCNR to consider and act on any requests to

make such corrections.  *See* 32 C.F.R. § 723.2.

31.     The relief available to current and former Navy military personnel through

application to the Board is broad and includes the correction of military records: (a) to change

the reason for discharge; (b) to reinstate a veteran to military service (which may include back

pay and allowances); (c) to void a passover of a candidate for promotion; and (d) to take other

actions as may be necessary to correct material error or injustice.

32.     Under Navy regulations, the BCNR relies on a presumption of regularity to

support the official actions of public officers and, in the absence of substantial evidence to the

contrary, will presume that they have properly discharged their official duties.  SECNAVINST

5420.193, § 3(e)(2).

33.     Even in adverse administrative actions, no one may intentionally use or disclose

the contents of an electronic communication, knowing or having reason to know that the

information was obtained by a violative interception, regardless of whether the user procured the

interception.  18 U.S.C. § 2511.

34.     Sexual harassment, as defined by SECNAVINST 5300.26D, is verbal or physical

conduct of a sexual nature, where the conduct has the purpose or effect of unreasonably

interfering with an individual's work performance or creates an intimidating, hostile or offensive

working environment.

## PLAINTIFF'S BCNR APPLICATION

35.     Plaintiff petitioned Defendant BCNR on August 1, 2014 requesting removal of adverse records in his OMPF, reinstatement of promotion to O-4, and an SSB.

36.     Plaintiff included the following in support of his BCNR application:

- Performance evaluations (Fitness Reports);

- co-worker's statements in support of Plaintiff;

- Mrs. Thomas's sworn statement(s);

- YNC Thomas's retraction statement;

- legal briefs submitted by Plaintiff's previous counsel regarding Defendant agents' use and consideration of information obtained in violation of 18 U.S.C. §2510 *et seq.*;

- evidence of Mrs. Thomas's continued unwelcome attempts to contact Plaintiff that Plaintiff rebuffed in compliance with a Military Protective Order, and which Defendant's agents disregarded;

- statement from Plaintiff's supervisor and other leadership in the command in support of Plaintiff;

- the Report and Disposition of Offense(s) (NAVPERS 1626/7) which documented Plaintiff was not informed of his rights prior to NJP;

- letters of support from Plaintiff's follow-on commander;

- a birthday card to Plaintiff from the command that had just previously imposed NJP;

- email with subject, "COME SEE ME NOW!" from Plaintiff's commander at

his final command before being involuntarily separated;

- voicemail from the above-mentioned commander stating she is "about to rip [Plaintiff] a new asshole;" and

- U.S. Senator Patty Murray's letter on behalf of Plaintiff.

37.    On September 16, 2015, a three-member panel of the Defendant BCNR denied Plaintiff's application for correction of his record, substantially concurring with the comments contained in the advisory opinions from Navy Personnel Command: Performance Evaluation (PERS-32), Post Selection Board Matters (PERS-833), and the Office of Legal Counsel (PERS-00J).  The Board concluded that Plaintiff's statement that his relationship with Ms. Thomas was purely platonic was false; that mitigating factors and Plaintiff's assertion that he did not commit misconduct were insufficient to remove the punitive letter of reprimand dated April 2, 2012; and that the adverse performance evaluation was administratively and procedurally correct as written and filed.

38.    Neither the advisory opinions, nor Defendant BCNR provided any explanation for the errors and injustices committed where the Plaintiff was not properly advised of his rights at NJP; where the Defendant unlawfully considered fraudulent evidence obtained in violation of 18 U.S.C. §2510 *et seq.* at the NJP, which was incorporated in the remarks on the adverse performance evaluation, and was also considered at the Board of Inquiry and promotion board(s).

**CLAIM FOR RELIEF**
**Administrative Procedure Act, 5 U.S.C. § 706**

39.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

40.   Defendant BCNR's denial of Plaintiff's application constitutes final agency
action.

41.   Defendant BCNR's decision denying Plaintiff's application was arbitrary,
capricious, an abuse of discretion, and otherwise not in accordance with the law.  The decision is
unsupported by substantial evidence.

42.   Plaintiff has been irreparably harmed by the unlawful decision and will continue
to be irreparably harmed unless and until the Defendants' decision is set aside.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare the Secretary of
the Navy's September 16, 2015 decision to be arbitrary, capricious, an abuse of discretion, and
otherwise not in accordance with the law; (2) declare that the denial of the Plaintiff's BCNR
application was not supported by substantial evidence; (3) direct the Defendant to reinstate
Plaintiff to military service (with any associated back pay and allowances); (4) award Plaintiff
attorneys' fees and other litigation costs reasonably incurred in this action; and (5) grant Plaintiff
such other relief as the Court deems just and proper.

Respectfully submitted,

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E. Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

*Attorney for Plaintiff*

10